# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-598V
Filed: January 31, 2019
Unpublished

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| ROSS VINOCUR, | \* | |
| | \* | |
| Petitioner, | \* | Ruling on Entitlement; Table Injury; |
| | \* | Influenza (Flu) Vaccine; Shoulder |
| v. | \* | Injury Related to Vaccine Administration |
| | \* | (SIRVA); Findings of Fact; |
| SECRETARY OF HEALTH | \* | Onset of Petitioner's Shoulder Pain; |
| AND HUMAN SERVICES, | \* | Special Processing Unit (SPU) |
| | \* | |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Shaelene Wasserman, Muller Brazil, LLP, Dresher, PA*, for petitioner.
*Daniel Anthony Principato, U.S. Department of Justice, Washington, DC*, for respondent.

## FINDINGS OF FACT AND RULING ON ENTITLEMENT[1]

**Dorsey,** Chief Special Master:

On May 4, 2017, Ross Vinocur ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act" or "Program") for a left shoulder injury, diagnosed as adhesive capsulitis, caused in fact by the influenza vaccination he received on November 9, 2014. Petition at 1, ¶¶ 2, 8, 10 (ECF No. 1). The case was assigned to the Special Processing Unit ("SPU").

---

[1] The undersigned intends to post this ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

During a fact hearing held on November 6, 2018 in Washington, D.C., the undersigned made factual findings regarding petitioner's prior condition, the onset of his pain, scope of his pain and limited range of motion, and lack of other condition or abnormality. Pursuant to these findings, which are set forth in this ruling, the undersigned determined petitioner's adhesive capsulitis meets the criteria for a Table shoulder injury related to vaccine administration ("SIRVA") following receipt of the influenza vaccine.[3] Accordingly, the undersigned finds that petitioner is entitled to compensation.

## I.     Procedural History

Along with the petition, petitioner filed the medical records required by the Vaccine Act. *See* Exhibits 1-4 (ECF No. 1); Statement of Completion (ECF No. 2); *see also* § 11(c)(2) (for a description of the required medical records). An initial status conference was scheduled for June 16, 2017.

During the call, petitioner's counsel confirmed that all known and updated medical records had been filed. Order, issued June 16, 2017, at 1 (ECF No. 8). The staff attorney managing this SPU case suggested that a detailed affidavit from petitioner, describing his injury, particularly the onset of his pain and reason for delay in seeking treatment, would be helpful. *Id.* Petitioner filed his affidavit on August 1, 2017. (ECF No. 9). On December 20, 2017, respondent filed a status report indicating he intended to defend this case. (ECF No. 13). He requested to file his Rule 4 report by January 29, 2018. *Id.*

In his Rule 4 report, respondent argued that compensation was not appropriate in this case because petitioner had failed to establish that he suffered a Table Injury or that his injury was caused by the influenza vaccination he received. Respondent's Rule 4 Report ("Rule 4 Report") filed Jan. 29, 2018, at 3-5 (ECF No. 17). Regarding a Table SIRVA, respondent maintained "the record does not demonstrate that petitioner's symptoms began within 48 hours after vaccination." *Id.* at 3; *see* 42 C.F.R. § 100.3(a)(XIV) and (c)(10)(ii) (requiring petitioner's pain to have occurred within 48 hours of vaccination). He stressed that "[p]etitioner did not seek medical care until more than four months after vaccination." Rule 4 Report at 3. Additionally, he asserted an earlier occurrence of frozen right shoulder suggests petitioner "may have underlying pathology and a propensity to develop adhesive capsulitis, not related to the vaccine" and that the hand tremors suffered by petitioner "suggests there could be some underlying neurological issue, which would also preclude petitioner from establishing causation under the Table." *Id.* at 4. When arguing petitioner had not provided preponderant

---

[3] Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Table. *See* National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final Rule, 82 Fed. Reg. 6294 (Jan. 19, 2017); National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date, 82 Fed. Reg. 11321 (Feb. 22, 2017) (delaying the effective date of the final rule until March 21, 2017). The requirements for SIRVA following receipt of the influenza vaccination are set forth in the Vaccine Table (42 C.F.R. § 100.3(a)(XIV) (2017)) and the Table's Qualification and Aids to Interpretation ("QAI") for SIRVA (42 C.F.R. § 100.3(c)(10)).

2

evidence to establish causation in fact, respondent again mentioned the four-month delay in treatment and possible alternative causes for petitioner's injury *Id.* at 5. After reviewing the Rule 4 report, the undersigned directed the staff attorney to hold a call with the parties to inform them of her initial impressions and to discuss the next step in this case.

During the call held on February 23, 2018, the staff attorney informed the parties that the undersigned believed petitioner's history of adhesive capsulitis in the opposite (right) shoulder almost five years earlier would not preclude petitioner from establishing causation in this case. *See* Order, issued Mar. 6, 2018, at 1 (ECF No. 18). She added that the undersigned had further indicated she was not aware of a neurological problem which would cause both petitioner's hand tremors and the SIRVA type of symptoms experienced by petitioner. *Id.* She informed petitioner's counsel that the undersigned wished to see affidavits from petitioner and any lay witnesses addressing the onset and duration of his hand tremors and his left shoulder adhesive capsulitis and medical records related to his hand tremors, particularly any which show a diagnosis of this condition. *Id.* at 1-2. Respondent's counsel added that any affidavits from non-family members would be particularly helpful. *Id.* at 2.

A few months later, petitioner filed a second affidavit and additional medical records from his primary care provider ("PCP"), Arnold Koff, M.D. *See* Exhibits 6-7, filed Apr. 11, 2018 (ECF No. 19). The following month, he filed an affidavit from a co-worker, Chris Cobb. *See* Exhibit 8, filed May 2, 2018 (ECF No. 22). On May 22, 2018, the staff attorney held a status conference with the parties to inform them that the undersigned wished to hold a fact hearing in this case. Pre-Hearing Order, issued June 11, 2018, at 1 (ECF No. 23). Deadlines for the parties' pre-hearing submissions were set. *Id.* at 2.

The fact hearing was held on November 6, 2018, in Washington, D.C. Petitioner was the only witness and testified remotely, utilizing video conferencing. Following the hearing, the parties were given 30 days to supplement the record, and two articles regarding SIRVA injuries were filed as Court Exhibits I and II.[4] The matter of entitlement is now ripe for adjudication.

## II.   Factual History

Initially, petitioner filed medical records from his PCP, Dr. Koff at Avon Health, from three years prior to vaccination as recommended for most adult vaccinees.[5] *See* Exhibit 4 at 2 (requesting medical records from 11/1/11 to the present). Later, petitioner filed additional records from as early as October 2004. *See* Exhibit 7.

---

[4] These articles are S. Atanasoff et al., *Shoulder injury related to vaccine administration (SIRVA)*, 28 Vaccine 8049 (2010), filed as Court Exhibit I and M. Bodor and E. Montalvo, *Vaccination Related Shoulder Dysfunction*, 25 Vaccine 585 (2007), filed as Court Exhibit II.

[5] *See Guidelines for Practice under the National Vaccine Injury Compensation Program* at 13-14, http://www.uscfc.uscourts.gov/sites/default/files/19.01.18%20Vaccine%20Guidelines.pdf (last visited on Jan. 15, 2019).

3

These earlier records show that petitioner was seen twice in 2004 and three times in 2006, for tightness in his chest, difficulty clearing his throat, several episodes of vertigo, hypothyroidism, and chronic sinusitis. *See* Exhibit 7. On October 26, 2004, he underwent a treadmill test (*id.* at 8) and was provided samples of Nexium in May 2006 (*id.* at 10). In the records from the visits in 2006, it is noted that petitioner's symptoms did not prevent him from running and playing soccer. *Id.* at 11.

Petitioner next visited his PCP on March 28, 2013, for an annual physical. Exhibit 4 at 4. In the history section of this record, petitioner's long-term chest palpitations and chronic throat clearing are described. Also, listed is "mild trembling in [petitioner's] right hand when grasping an object such as a coffee mug close to the body." *Id.* It is recorded that petitioner has experienced this tremor "for more than 10 years with no change." *Id.*

Petitioner received the influenza vaccination alleged as causal at the minute clinic in the CVS pharmacy on November 9, 2014. Exhibit 1 at 3-4. The vaccine record shows the vaccination was administered in petitioner's left deltoid. *Id.* at 4.

Following this vaccination, petitioner did not receive medical care until he sought treatment for his left shoulder adhesive capsulitis from Roy D. Beebe, M.D., an orthopedist at UConn Health Center, approximately four and one-half months later, on March 25, 2015. Exhibit 2 at 16. The record from that visit indicates petitioner had experienced three months of left shoulder pain since receiving the influenza vaccination in December 2014. His discomfort was described as gradually worsening until he experienced significant pain at night and at rest and a significant loss of motion. In this record, it is noted that petitioner previously suffered from adhesive capsulitis in his contralateral (right) shoulder. *Id.*

Dr. Beebe performed a physical examination of petitioner's left shoulder which revealed petitioner had mild diffuse tenderness, forward flexion to 80 degrees, abduction to 45 degrees, and no external rotation. Exhibit 2 at 16. He ordered x-rays of petitioner's left shoulder which were normal, administered a cortisone injection, prescribed a narcotic opioid for nighttime, and ordered aggressive physical therapy ("PT"). *Id.* at 16-18; *see also* Exhibit 3 at 10 (Rx for PT).

Petitioner attended 10 PT sessions at Magna Physical Therapy & Sports Medicine Center, LLC ("Magna PT") in April 2015. Exhibit 3 at 11-20. At his first visit on April 2, 2015, petitioner reported that his symptoms started in November 2014, and that he believed they were caused by the "flu shot" he received. *Id.* at 7. Describing his pain as a low-level ache which had increased in the past three weeks, petitioner rated the severity of his pain at five out of ten currently, three out of ten at its best, and nine out of ten at its worst. *Id.* at 5, 8. In the PT record from this initial visit, it is noted that Dr. Beebe had diagnosed petitioner with left frozen shoulder and administered an injection which had been "helpful for a few day[s]." *Id.* at 5. Petitioner reported that he had suffered from adhesive capsulitis in his right shoulder in 2010 which took

approximately six months to resolve.  *Id.* at 7, 11.  Although he participated in PT for this earlier injury, he "did not complete his therapy due to frustration with chronicity."  *Id.* at 11.  Observing that petitioner's current symptoms were consistent with left shoulder adhesive capsulitis, the physical therapist recorded impairments in petitioner's range of motion ("ROM"), strength, and functionality.  He recommended that petitioner attend PT three times per week for four weeks.  *Id.* at 12.

At his last visit in April 2015, due to the level of his pain and increased discomfort following treatment, petitioner questioned whether he should continue with PT.  Exhibit 3 at 20.  In response, the physical therapist "[d]iscussed [the] importance of relaxation during manual stretching" and increasing petitioner's home exercise program ("HEP").  *Id.*  He observed that petitioner had made good progress increasing his ROM but still showed significant guarding and pain at the end of his movement.  After decreasing the amount of manual stretching performed during the session, the therapist noted that petitioner tolerated the treatment better.  *Id.*

Towards the end of April 2015, petitioner visited his PCP, Dr. Koff, seeking his opinion on his left frozen shoulder.  Exhibit 4 at 12.  At that visit, petitioner reported that his pain started in November 2014 when he received the influenza vaccination.  Noting that his pain had not relented, petitioner indicated that he began to have difficulty moving his shoulder two months ago.  He informed Dr. Koff that Dr. Beebe had diagnosed him with frozen shoulder and prescribed oxycodone which he took only at night.  He disclosed that he had experienced some improvement in ROM since starting PT two weeks ago.  *Id.* Although not clearing indicated in these records, it appears Dr. Koff prescribed a different medication, piroxicam.[6]  *See* Exhibit 2 at 15 (record from later visit with Dr. Beebe).

Petitioner returned to Dr. Beebe for follow-up regarding his left shoulder adhesive capsulitis on June 1, 2015.  Exhibit 2 at 15.  He reported that his pain had improved, but that he still had marked, although also improved, pain at night.  He tried taking meloxicam to facilitate better sleep but found it did not help.  Upon examination, Dr. Beebe observed that petitioner's forward flexion remained at 80 degrees, but his abduction had improved to 80 degrees and his external rotation had improved to 30 degrees.  He instructed petitioner to continue aggressive PT.  *Id.*

Petitioner was re-evaluated at Magna PT on June 4, 2015.  Exhibit 3 at 21.  In this record, it is noted that he had received PT in April 2015 but had not been treated for over a month due to travel and work.  After seeing his orthopedist, he was referred again to PT.  Petitioner's pain and limited ROM continued but were described as improved.  *Id.*

---

[6] Piroxicam is a nonsteroidal anti-inflammatory drug used for treatment of conditions such as rheumatoid arthritis and osteoarthritis.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY ("DORLAND'S") at 1450 (32th ed. 2012).  According to petitioner, this medication failed to alleviate his pain.  Exhibit 6 at 6 (petitioner's second affidavit); Testimony ("Tr.") at 24.

Petitioner attended five PT sessions in June and July 2015.  Exhibit 3 at 21-27.  At his last PT session on July 2, 2015, he reported that he "fe[lt] about the same."  *Id.* at 27.  Observing that petitioner still suffered from significant limitation in his external rotation, the therapist indicated petitioner would "continue to benefit from skilled PT to increase ROM and strength in order to maximize functional mobility."  *Id.*  In addition to recommending additional PT, the therapist encouraged petitioner to continue his HEP.  *Id.*

Almost a year later, on May 26, 2016, petitioner was seen at UConn Health Urgent Care for a cough.  There is no mention of any other condition, including petitioner's left shoulder adhesive capsulitis.  Exhibit 2 at 11-14.

On August 11, 2016, petitioner visited his PCP, Dr. Koff, for his annual physical.  Exhibit 4 at 20.  At this visit, he indicated that he had "no further problems with [his] shoulder."  *Id.* (all letters capitalized in the original).

He returned to his PCP three months later, on November 10, 2016, to check on other conditions and to discuss recent bloodwork.  Exhibit 4 at 24.  The medical record from this visit reveals petitioner had full ROM and was not taking any medication but was avoiding sleeping on his left shoulder due to ongoing discomfort.  This is the last medical record which mentions petitioner's left shoulder injury.  *Id.*

Beginning with the record from petitioner's March 28, 2013 visit, all medical records from petitioner's PCP include an entry regarding his right-handed tremor.  *See* Exhibit 4.  In the most recent PCP record filed, from a visit on November 10, 2016, additional information is provided.  It is noted that petitioner's daughter developed a similar tremor at age 26 but that petitioner knows of no other relative with this condition.  The record again mentions that the tremor remains unchanged but adds that it does not interfere with petitioner's ability to write.  Exhibit 4 at 24.[7]

### III.    Legal Standard for Entitlement

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1).  § 13(a)(1)(A).  In making this determination, the special master or court should consider the record as a whole.  § 13(a)(1).  Petitioner's allegations must be supported by medical records or by medical opinion.  *Id.*

---

[7] This record also indicates petitioner has experienced the tremor for five to ten years.  As the it was documented in 2013 that petitioner had suffered from the tremor for more than ten years, this later entry appears to be erroneous.  *Compare* Exhibit 4 at 4 (entry from record dated March 28, 2013) *with id.* at 24 (entry from record dated November 10, 2016).

6

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[8] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. § 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. § 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> *Shoulder injury related to vaccine administration (SIRVA).* SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic    studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

---

[8] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

7

42 C.F.R. § 100.3(c)(10).

If, however, petitioner suffered an injury that either is not listed in the Table or did not occur within the prescribed time frame, she must prove that the administered vaccine caused injury to receive Program compensation. § 11(c)(1)(C)(ii) and (iii).  In such circumstances, petitioner asserts a "non-Table or [an] off-Table" claim and to prevail, petitioner must prove her claim by preponderant evidence. § 13(a)(1)(A).  The Federal Circuit has held that to establish an off-Table injury, petitioner must "prove . . . that the vaccine was not only a but-for cause of the injury but also a substantial factor in bringing about the injury." *Shyface v. Sec'y of Health & Human Servs.*, 165 F.3d 1344, 1351 (Fed. Cir 1999).  *Id.* at 1352.  The received vaccine, however, need not be the predominant cause of the injury.  *Id.* at 1351.

The Circuit Court has indicated that a petitioner "must show 'a medical theory causally connecting the vaccination and the injury'" to establish that the vaccine was a substantial factor in bringing about the injury.  *Shyface,* 165 F.3d at 1352-53 (quoting *Grant v. Sec'y of Health & Human Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992)). The Circuit Court added that "[t]here must be a 'logical sequence of cause and effect showing that the vaccination was the reason for the injury.'"  *Id.* The Federal Circuit subsequently reiterated these requirements in a three pronged test set forth in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005).  Under this test, a petitioner is required

> to show by preponderant evidence that the vaccination brought about her injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury.

*Id.*  All three prongs of *Althen* must be satisfied. *Id.*  Circumstantial evidence may be considered, and close calls regarding causation must be resolved in favor of the petitioner. *Id.* at 1280.

IV.   **Fact Hearing**

A. **Applicable Legal Standard for Factual Findings**

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. § 13(a)(1)(A).  To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. See *Burns v. Sec'y of Health &*

8

*Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

### B. Affidavits and Testimony

Petitioner filed affidavits in August 2017 and April 2018. *See* Exhibits 5-6. In both, he indicated he received the influenza vaccination alleged as causal at the CVS Pharmacy on November 9, 2014. Exhibits 5 at ¶ 2; 6 at ¶ 2. In the earlier affidavit, petitioner indicates he suffered dull pain immediately upon vaccination which increased over the subsequent weeks and months. Exhibit 5 at ¶ 3. In the later affidavit, he describes his pain and stiffness as starting that night or by the next morning. Exhibit 6 at ¶ 4.

During the fact hearing, petitioner testified that he felt a burning pain upon injection, as though he "could feel the serum going in." Tr. at 10. He stated that the injection was more painful than other vaccinations he had received. *Id.* When asked about the seemingly inconsistent information regarding the onset of his pain in his affidavits, petitioner indicated that he felt localized pain immediately upon injection and pain and stiffness more reminiscent of the symptoms he experienced in his right shoulder in 2010, by the next day. Tr. at 11. In both his testimony and later affidavit, petitioner indicated that, while being vaccinated, he was seated and the nurse, who was standing, administered the vaccination high in his left shoulder. Tr. at 10; Exhibit 6 at ¶ 3. When asked to identify the exact location of the vaccination, petitioner pointed to an area "approximately one-inch below his shoulder on the lateral aspect of his left arm." Tr. at 10.

In his testimony and both affidavits, petitioner indicated he did not seek immediate medical treatment due to his earlier experience with adhesive capsulitis in his right shoulder which "seemed to go away only with the passage of time." Exhibit 5 at ¶ 4; *accord.* Exhibit 6 at ¶ 4; Tr. at 16-17. He testified that, during this time, he self-treated with over the counter medications and some of the stretching exercises he performed in 2010. Tr. at 15-16. When petitioner's symptoms continued and became worse than those he experienced in 2010, he sought medical treatment from Dr. Beebe. Tr. at 17; Exhibit 5 at ¶ 4. Petitioner stated that he also "waited to see the same specialist doctor," presumably Dr. Beebe who he saw on March 25, 2015. Exhibit 6 at ¶ 5. He testified that by that time, "[his] arm was almost totally useless if [he] moved it at all . . . [and that he experienced] heightened pain with any type of movement." Tr. at 17

When asked, during both direct and cross examination, why he thought the medical record from his March 23, 2015 visit to Dr. Beebe identified the influenza vaccination as being administered in December and indicated he had suffered three, rather than four, months of left shoulder pain, petitioner surmised that he may have provided the erroneous information or that his information may have been vague and thus, mistakenly interpreted. Tr. at 17-18; 32-33. During cross examination, respondent's counsel also asked about an entry in the medical records from petitioner's April 23, 2015 visit to Dr. Koff which indicated he experienced difficulty moving his left shoulder beginning two months earlier. Tr. at 33-34; *see* Exhibit 4 at 12. In response, petitioner theorized that he may have been referring to a time when he experienced increased pain during movement. Tr. at 34. He testified that he did not know why he did not include any information regarding his immediate pain, upon injection, in his later affidavit, instead discussing only the timing of his pain and stiffness, which he indicated occurred that evening or the next morning. Tr. at 35.

Throughout his testimony, petitioner described his condition and the effect it had on him. In response to questioning from respondent's counsel, petitioner testified that, to his knowledge, he had not missed any soccer games due to his condition. Tr. at 37-38. However, he pointed out that he is not a goalie and thus, would not be required to throw the ball. Tr. at 38.

Following questioning by both counsel, the undersigned sought additional information regarding petitioner's work and the cause of his right frozen shoulder in 2010. Tr. at 39-40. When asked if he personally wrote the entries found on the intake form from his first PT session on April 2, 2015, stating that onset occurred in November 2014 and the cause of his injury was the influenza vaccination he received, petitioner confirmed that he had. Tr. at 41-42; *see* Exhibit 3 at 7.

Petitioner also filed an affidavit from a co-worker, Chris Cobb, in early May 2018. *See* Exhibit 8. Mr. Cobb indicates he has worked closely with petitioner for the last four and one-half years. *Id.* at ¶ 3. This means Mr. Cobb began working with petitioner in late 2013 or early 2014. In his affidavit, Mr. Cobb stated that petitioner informed him on multiple occasions in November 2014, that he had troubled sleeping due to his arm pain. *Id.* at ¶ 5. According to Mr. Cobb, after Thanksgiving, petitioner indicated that he "was having difficulty lifting his arm over his head and that his range of motion was painful." *Id.* at ¶ 6. He mentioned the influenza vaccination at that time and, in early 2015 told Mr. Cobb about the right shoulder symptoms he experienced previously. *Id.* at ¶¶ 6-7.

### C. Factual Findings

Respondent does not dispute that petitioner received the vaccination alleged as causal in his left deltoid on November 9, 2014. Rather, the primary disagreements in this case involve the timing of the onset of petitioner's left shoulder injury and existence of prior and con-current conditions which respondent suggests may explain petitioner's symptoms.

### 1. Prior Condition

The first requirement under the QAI for a Table SIRVA is a lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Although petitioner experienced right shoulder adhesive capsulitis in 2010, there is no evidence of pain, inflammation, or dysfunction in his left shoulder prior to the influenza vaccine administration. Respondent mentions petitioner's earlier right shoulder condition when arguing the existence of another condition which would explain petitioner's symptoms[9] but does not assert petitioner had any prior left shoulder issues.

The undersigned finds there is no evidence that petitioner experienced any issues with his left shoulder prior to vaccination.

### 2. Onset of Pain

Regarding the onset of petitioner's pain, in order to meet the definition of a Table SIRVA, petitioner must show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)) and that his pain occurred within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). Respondent argues that compensation is not appropriate because "the record does not demonstrate that petitioner's symptoms began within 48 hours after vaccination." Rule 4 Report at 3. However, there are additional Vaccine Act provisions the undersigned finds instructive in this case. Under Section 13 of the Act, the special master may find the time-period for the first symptom or manifestation of onset required for a Table injury is satisfied "even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such a period." § 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset . . . occur within the time period described in the Vaccine Injury Table." *Id.*

As the undersigned stated at the fact hearing, multiple entries in the medical records as well as petitioner's testimony and affidavits provide preponderant evidence that the onset of petitioner's pain occurred within 48 hours of vaccination. Tr. at 45-46. The histories contained in the medical records from Magna PT and petitioner's PCP, Dr. Koff, all indicate petitioner's left shoulder pain began in November 2014 when he received the influenza vaccination. For example, on the intake form, completed by petitioner when first seen at Magna PT on April 2, 2015, petitioner indicated his current symptoms started in November 2014. Exhibit 3 at 7. He added that he believes his symptoms were caused by the "flu shot" he received. *Id.* This information is echoed in the record from the initial evaluation performed that day. *Id.* at 11. Additionally, that record indicates petitioner "initially noticed pain and restricted movement but over the past 3 weeks it has become especially bad." *Id.* When seen by Dr. Koff later that

---

[9] The undersigned will discuss this argument further in Section IV.C.4. below.

month, petitioner reported that his pain began in November 2014 when he was administered the influenza vaccine. Exhibit 4 at 12. Specifically, petitioner stated that he was having pain in his arm after receiving the flu shot "which has not gone away." *Id.* (all letters capitalized in the original).

Although these histories were provided by petitioner, they were given within six months of vaccination, when petitioner first sought treatment. As the Federal Circuit has noted, it is appropriate for a special master to give greater weight to evidence contained in medical records created closer in time to the vaccination, even if the information is provided as part of a medical history. *Cucuras*, 993 F.2d at 1528 (medical records are generally trustworthy evidence). The Circuit Court explained that

> Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events.

*Id.*

The only medical record containing an entry suggesting the onset of petitioner's pain was later is from petitioner's initial visit to his orthopedist, Dr. Beebe, on March 25, 2015. The history section of that record indicates petitioner reported "a three-month history of pain since he had a flu shot back in December." Exhibit 2 at 16. It further indicates that "[s]ince that time, [petitioner] has had discomfort, which has gradually gotten worse to the point now [that petitioner has] significant pain at night and at rest and significant loss of motion." *Id.* Thus, the record erroneously indicates petitioner had three, rather than four, months of pain and that he received the influenza vaccination in December, rather than November. However, it is important to note that petitioner still linked the onset of his pain to the vaccine administration. Additionally, petitioner testified that he may have provided the wrong information during this visit or that he may have provided vague information which led the individual who transcribed the history to list the duration of petitioner's pain as three months and timing of vaccination as December 2014. Tr. at 17-18, 32-33. The undersigned finds either a reasonable explanation regarding the source of the erroneous information.

During his testimony petitioner also provided a reasonable explanation regarding the seemingly inconsistent information contained in his two affidavits regarding the onset of his pain. *Compare* Exhibit 5 at ¶ 3 *with* Exhibit 6 at ¶ 4. Petitioner testified that he felt localized pain, which he described as burning, immediately upon injection and pain and stiffness more reminiscent of the symptoms he experienced in his right shoulder in 2010, by the next day. Tr. at 10-11.

The undersigned finds that the preponderance of the evidence, as well as petitioner's testimony, establish that the onset of petitioner's pain was immediate and thus, within 48 hours of vaccination.

12

### 3. Scope of Pain and Limited ROM

To establish a Table SIRVA, petitioner's pain and reduced ROM must be limited to the shoulder in which the vaccination alleged as causal was administered. 42 C.F.R. § 100.3(c)(10)(iii). In the medical records filed, there is no indication that petitioner experienced pain or limited ROM in any area other than his left shoulder, and respondent does not dispute this fact.

The undersigned finds there is sufficient evidence to show petitioner's pain and reduced ROM to be limited to his left shoulder.

### 4. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain petitioner current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent argues that petitioner's right-hand tremor and earlier right shoulder adhesive capsulitis suggest conditions which would explain petitioner's left shoulder adhesive capsulitis. Rule 4 Report at 4.

The medical records from petitioner's PCP show petitioner suffered tremors in his right hand from at least 2003 to the present, evident when he attempted certain movements such as holding a coffee cup close to his body. Exhibit 4 at 4, 12, 24. In these entries, it is noted that petitioner's condition, evident only in his right hand, remained unchanged. *Id.* In his affidavit, petitioner indicated Dr. Koff diagnosed the condition as "familial tremors, . . . said it wasn't serious, . . . [and] offered to prescribe some medication that would take care of it if [he] wanted." Exhibit 6 at 7. Because the condition was not serious and remained unchanged, petitioner declined Dr. Koff's offer of medication. *Id.* The medical record from a November 2016 visit to Dr. Koff indicates petitioner's daughter developed a similar tremor at age 26 but that petitioner knows of no other relative with this condition. Exhibit 4 at 24. When petitioner sought a second opinion regarding his left shoulder adhesive capsulitis from Dr. Koff in April 2015, Dr. Koff made no connection between petitioner's right-hand tremors and his left shoulder adhesive capsulitis. Exhibit 4 at 12-19. The undersigned finds these records provide sufficient evidence to establish petitioner's left shoulder adhesive capsulitis is unrelated to his right-hand tremors which is a benign condition in existence and unchanged for years.

Regarding petitioner's 2010 right shoulder adhesive capsulitis, there is a similar lack of evidence pointing to any connection between it and the left shoulder adhesive capsulitis suffered by petitioner in 2014-15. The medical records from Dr. Beebe and Magna PT contain numerous references to petitioner's earlier right shoulder injury. Exhibits 2 at 16; 3 at 11, 17, 21. As with petitioner's right-hand tremors, none of these medical providers mentions a link between the two episodes of adhesive capsulitis, separated by almost five years and occurring in different shoulders. At the fact hearing, petitioner testified that the cause of his right shoulder adhesive capsulitis was never determined. Tr. at 40. Adding that both he and his wife experienced adhesive capsulitis

at that time, he theorized that this earlier episode may have been vaccine caused as well. *Id.* Although he could not recall if he received a vaccination at that time, in 2010, he suggested that it was possible since he and his wife would have gotten vaccinated at the same time. *Id.*

The undersigned finds there is preponderant evidence showing there is no condition, including petitioner's right-hand tremors and past right shoulder adhesive capsulitis, which would explain the left shoulder adhesive capsulitis petitioner suffered in 2014-15.

## V.      Conclusion

Based on the record as a whole, including the testimony of petitioner, the undersigned finds by preponderant evidence that (1) petitioner had no prior problem with his left shoulder; (2) the onset of petitioner's pain occurred within 48 hours, specifically immediately upon vaccination; (3) petitioner's pain and reduced ROM were limited to his left shoulder; and (4) petitioner had no prior condition or abnormality that would explain his symptoms. Thus, the criteria for a Table Injury of SIRVA is satisfied, and causation is presumed.[10] **The undersigned finds that petitioner is entitled to compensation in this case.**

**IT IS SO ORDERED.**

                                             **s/Nora Beth Dorsey**
                                             Nora Beth Dorsey
                                             Chief Special Master

---

[10] Although the undersigned also made preliminary findings regarding causation at the fact hearing, finding sufficient preponderant evidence existed to establish causation, no further discussion regarding causation is needed. Tr. at 47-48.